UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MASSIMILIANO LUONGO,

                Plaintiff,

       v.

44-37 RESTAURANT CORP., THE RUSSO'S
PAYROLL GROUP, INC., and FRANK RUSSO,

                Defendants.
-------------------------------------------------------------X

**Case No.:**

**1:13-cv-7420 (CBA) (RML)**

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS ............................................................................................................................. 2

STANDARD AND BURDEN OF PROOF ...................................................................... 6

ARGUMENT ................................................................................................................... 7

    POINT I ...................................................................................................................... 7

    PLAINTIFF'S DEGREE OF SUCCESS WAS MARGINAL .................................... 7

    POINT II ................................................................................................................... 10

    EVEN ASSUMING *ARGUENDO* THAT PLAINTIFFS WERE THE PREVAILING
    PARTIES, THE HOURLY RATES AND THE NUMBER OF HOURS THEIR
    COUNSEL BILLED ON THIS CASE MUST BE SIGNIFICANTLY REDUCED ....... 10

    A. Plaintiff's Hourly Rates Are Unreasonable ..................................................... 11

    B. Plaintiff's Recovery is Disproportionate to the Requested Fees ..................... 15

        i. The Requested Fees are More than 183% of Plaintiff's Recovery ......................... 15

        ii. Plaintiff was Dishonest About Attorneys' Fees During Settlement Discussions ... 16

        iii. Plaintiff's Conduct Resulted in a Waste of Legal & Judicial Resources .............. 17

    C. O'Neill Law's Hours Expended on the Case are Unreasonable ..................... 19

        i. Plaintiff Unreasonably Refused to Accept Defendants' Rule 68 Offer of Judgment
        or Settlement Offers ........................................................................................... 20

        ii. Plaintiff's Calculation of Damages Was Unreasonably Inflated ........................... 24

        iii. Plaintiff is Not Entitled to Fees on His Unsuccessful Motions and on Defendants'
        Successful Motions ............................................................................................ 24

        iv. O'Neill Law Should Not Be Awarded Fees for Performing Duplicative Work ... 25

        v. O'Neill Law Overbilled ................................................................................... 26

        vi. O'Neill Law Utilized Experienced Counsel to Perform Mundane Legal and Non-
        Legal Tasks ...................................................................................................... 27

**vii. Plaintiff Should Not Be Awarded Fees for Block Billing or Vague Entries ........ 28**

**vii. Plaintiff Should Not Be Awarded Fees for Vague and Incomplete Billing Descriptions ............................................................................................................... 29**

**ix. Plaintiff is Not Entitled to Costs ................................................................ 30**

**x. O'Neill Law Overbilled for Travel ............................................................. 31**

**xi. Other Considerations ................................................................................ 31**

**CONCLUSION ........................................................................................... 32**

## TABLE OF AUTHORITIES

**Cases**

Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship,
    2006 U.S. Dist. LEXIS 15603 (S.D.N.Y. Mar. 6, 2006) ...................................................28

Aiello v. Town of Brookhaven,
    No. 94-CIV.-2622 (FB) (WDW), 2005 U.S. Dist. LEXIS 11462 (E.D.N.Y. June 13, 2005)
    ...............................................................................................................................................29

AM Properties v. Town of Chapel Hill,
    202 F. Supp. 2d 451 (M.D.N.C. 2002) .............................................................................31

Am. Bd. of Internal Med. v. Muller,
    2014 U.S. Dist. LEXIS 25784 (E.D. Pa. Feb. 26, 2014) ..............................................24-25

Angamarca v. Pita Grill 7 Inc.,
    2012 U.S. Dist. LEXIS 108322 (S.D.N.Y. Aug. 2, 2012)..................................................14

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
    522 F.3d 182 (2d Cir. 2007)........................................................................................7, 11

Ayres v. 127 Rest. Corp.,
    No. 99-CIV.-7723, 1999 WL 1295335 (2d  Cir. Dec. 23, 1999)........................................21

Barfield v. N.Y. City Health & Hosps. Corp.,
    537 F.3d 132 (2d Cir. 2008).........................................................................................7, 8

Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.,
    2013 U.S. Dist. LEXIS 42950 (S.D.N.Y. Mar. 21, 2013) ........................................9, 10, 22

Bethlehem Area Sch. Dist. v. Zhou,
    2014 U.S. Dist. LEXIS 89985 (E.D. Pa. July 1, 2014).....................................................24

Bridges v. Eastman Kodak Co.,
    1996 U.S. Dist. LEXIS 809 (S.D.N.Y. Feb. 06, 1996).....................................................27

Boutros v. JTC Painting & Decorating Corp.,
    989 F. Supp. 2d 281 (S.D.N.Y. 2013)..............................................................................21

Cazarez v. Atl. Farm & Food Inc.,
    No. 15-CIV.-2666 (CBA) (RML), 2017 WL 3701687 (E.D.N.Y. May 31, 2017)............11

Cazarez v. Atl. Farm & Food Inc.,
    No. 15-CIV.-2666 (CBA) (RML), 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017)............11

Cesario v. BNI Constr., Inc.,
   2008 U.S. Dist. LEXIS 103155 (S.D.N.Y. Dec. 15, 2008) ...............................................14

Chambless v. Masters, Mates & Pilots Pension Plan,
   1988 U.S. Dist. LEXIS 7486 (S.D.N.Y. July 21, 1988) ..............................................13, 29

Cho v. Koam Med. Servs. P.C.,
   524 F. Supp. 2d 202 (E.D.N.Y. 2007) ..........................................................................14, 30

Comm'n Express Nat'l, Inc. v. Rikhy,
   2006 U.S. Dist. LEXIS 8716 (E.D.N.Y. Feb. 16, 2006)....................................................28

Constantin Cionca v. Interactive Realty, LLC,
   2016 U.S. Dist. LEXIS 77372 (S.D.N.Y. Jun. 10, 2016) .........................................7, 8 n. 2

De Los Santos v. Just Wood Furniture, Inc.,
   2010 U.S. Dist. LEXIS 15463 (S.D.N.Y. Feb. 2, 2010)....................................................24

Detroit v. Grinnell Corp.,
   495 F.2d 448 (2d Cir. 1974)..............................................................................................20

Estrella v. P.R. Painting Corp.,
   2009 U.S. Dist. LEXIS 9608 (E.D.N.Y. February 7, 2009) ..............................................14

Falleson v. Paul T. Freund Corp.,
   736 F. Supp. 2d 673 (W.D.N.Y. 2010) ..............................................................................22

Farar v. Hobby,
   506 U.S. 103 (1992)........................................................................................................7, 8

Fuchs v. Tara Gen. Contr., Inc.,
   2009 U.S. Dist. LEXIS 102286 (E.D.N.Y. Nov. 3, 2009).................................................19

Fujiwara v. Sushi Yasuda Ltd.,
   58 F. Supp. 3d 424 (S.D.N.Y. Nov. 12, 2014).....................................................................8

Goldberger v. Integrated Res., Inc.,
   209 F.3d 43 (2d Cir. 2000)................................................................................................20

Greathouse v. JHS Sec., Inc.,
   2012 U.S. Dist. LEXIS 127312 (S.D.N.Y. Sept. 7, 2012)................................................19

Green v. Torres,
   290 F. Supp. 2d 427 (S.D.N.Y. 2003)...............................................................................21

Guallpa v. N.Y. Pro Signs Inc.,
     2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014).................................................19

Gunawan v. Sake Sushi Rest.,
     897 F. Supp. 2d 76 (E.D.N.Y. 2012) ..............................................................................14

Haworth v. Nevada,
     56 F.3d 1048 (9th Cir. 1995) ...........................................................................................18

Hensley v. Eckerhart,
     461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)..............................................20, 29

Hernandez v. Punto y Coma Corp.,
     No. 10-CIV.-3149 (NGG) (RML), 2013 WL 4875074 (E.D.N.Y. Sept. 11, 2013) ..........30

Hurst v. Town of Merrillville,
     2011 U.S. Dist. LEXIS 65476 (N.D. Ind. June 17, 2011) ................................................25

James v. AMTRAK,
     2005 U.S. Dist. LEXIS 5401 (S.D.N.Y. Mar. 28, 2005) ..................................................21

Jankey v. Poop Deck,
     537 F.3d 1122 (9th Cir. 2008) ....................................................................................18, 24

Kahlil v. Original Old Homestead Rest., Inc.,
     657 F. Supp. 2d 470 (S.D.N.Y. 2009)..............................................................................27

Karic v. Major Automatove Companies, Inc.,
     2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. Apr. 27, 2016) ........................................7, 8 n. 2

Kassim v. City of Schenectady,
     415 F.3d 246, 254 (2d Cir. 2005)....................................................................................15

Kirsch v. Fleet St., Ltd.,
     148 F.3d 149, 173 (2d Cir. 1998).....................................................................................20

Kirsch v. Fleet Street, Ltd.,
     1996 U.S. Dist. LEXIS 17808 (S.D.N.Y. Dec. 4, 1996) ..................................................21

Levy v. Powell,
     No. 2005 WL 1719972, at 6 (E.D.N.Y. Jul. 22, 2005) ....................................................15

Local 32B-32J, SEIU v. Port Auth.,
     180 F.R.D. 251 (S.D.N.Y. 1998) .....................................................................................28

M.S. Distributing Co. v. Web Records, Inc.,
    2003 U.S. Dist. LEXIS 13297 (N.D. Ill. Jul. 31, 2003):.....................................................31

Maldonado v. Bistro 1285 Inc.,
    2013 U.S. Dist. LEXIS 70815 (S.D.N.Y. May 13, 2013).................................................14

Marisol A. v. Giuliani,
    111 F. Supp. 2d 381 (S.D.N.Y. 2000)...........................................................................29

Mendez v. Radec Corp.,
    907 F. Supp. 2d 353 (W.D.N.Y. 2012) ....................................................................18, 24

Meriwether v. Coughlin,
    727 F. Supp. 823 (S.D.N.Y. 1989) ...............................................................................29

Millea v. Metro-North R.R.,
    658 F.3d 154 (2d Cir. 2011)......................................................................................6, 10

Morales v. Travel Ports of Am.,
    1998 U.S. Dist. LEXIS 9539 (S.D.N.Y. June 24, 1998)..................................................26

Moriarty v. Svec,
    233 F. 3d 955 (7th Cir. 2000) ......................................................................................22

Morris v. Eversley,
    343 F. Supp. 2d 234 (S.D.N.Y. 2004)...........................................................................15

Mr. X v. New York State Dep't of Educ.,
    20 F. Supp. 2d 561 (S.D.N.Y. 1998).............................................................................29

Murray v. Comm'r of N.Y. Dep't of Educ.,
    354 F. Supp. 2d 231 (E.D.N.Y. 2005............................................................................13

Myree v. Local 41, IBEW,
    847 F. Supp. 1059 (W.D.N.Y. 1994).............................................................................21

N.Y. State Ass'n for Retarded Children, Inc. v. Carey,
    711 F.2d 1136 (2d Cir. 1983)..................................................................................12, 19

Olsen v. County of Nassau,
    2010 U.S. Dist. LEXIS 5915 (E.D.N.Y. Jan. 26, 2010) ..................................................20

Ortiz v. Prestige Kitchen Design, Inc.,
    2013 U.S. Dist. LEXIS 135866 (E.D.N.Y. Sept. 23, 2013)..............................................22

Perez v. Manhattan Jeep Eagle,
    1997 U.S. Dist. LEXIS 11928 (S.D.N.Y. Aug. 7, 1997) .................................................26

Pinzon v. Paul Lent Mech. Sys.,
    2012 U.S. Dist. LEXIS 134122 (E.D.N.Y. Aug. 21, 2012)............................................6

Pinzon v. Paul Lent Mech. Sys.,
    2012 U.S. Dist. LEXIS 134125 (E.D.N.Y. Sep. 19, 2012).............................................6

Powell v. Carey Int'l, Inc.,
    547 F. Supp. 2d 1281 (S.D. Fla. 2008) ............................................................22

Quarantino v. Tiffany & Co.,
    166 F. 3d 422 (2d Cir. 1999)......................................................................21

Ragin v. Harry Macklowe Real Estate Co.,
    870 F. Supp. 510 (S.D.N.Y. 1994) .................................................................21

Raniola v. Bratton,
    2003 WL 1907865 (S.D.N.Y. Apr. 21, 2003).........................................................14

Sabatini v. Corning-Painted Post Area Sch. Dist.,
    190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) ....................................................26, 28

Sahyers v. Prugh, Holliday & Karatinos, P.L.,
    No. 08-10848 (M.D. Fla. March 3, 2009)......................................................18, 24

Sanchez v. I&A Rest. Corp.,
    2017 U.S. Dist. LEXIS 81240 (S.D.N.Y. May 22, 2017)...............................................7

Savoie v. Merchants Bank,
    166 F.3d 456 (2d Cir. 1999)...................................................................7, 10

Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.,
    277 F. Supp. 2d 323 (S.D.N.Y. 2003).........................................................25, 28

Small v. New York City Transit Auth.,
    2014 U.S. Dist. LEXIS 39582 (E.D.N.Y. Mar. 25, 2014) ....................................26, 27, 31

Smith v. Wettenstin,
    2003 WL 22966281 (S.D.N.Y. Dec. 16, 2003)........................................................13

Stanczyk v. City of New York,
    752 F.3d 273 (2d Cir. 2014)........................................................................21

Starkey v. Somers Cent. Sch. Dist.,
   2008 U.S. Dist. LEXIS 104064 (S.D.N.Y. Dec. 23, 2008) ..............................................21

Tlacoapa v. Carregal,
   386 F. Supp. 2d 362 (S.D.N.Y. 2005)................................................................................13

Velasquez v. Digital Page, Inc.,
   842 F. Supp. 2d 486 (E.D.N.Y., Feb. 2. 2012) ...........................................................7, 17

Wallert v. Atlan,
   2015 U.S. Dist. LEXIS 13958 (S.D.N.Y. Feb. 5, 2015)...................................................21

Wei Yan Yan v. 520 Asian Rest. Corp.,
   2015 U.S. Dist. LEXIS 28495 (S.D.N.Y. Mar. 9, 2015) ..................................................26

White v. Western Beef Props.,
   2014 U.S. Dist. LEXIS 155868 (E.D.N.Y. Sept. 30, 2014)..............................................24

Wyant v. Allstate Indem. Co.,
   2009 U.S. Dist. LEXIS 111663 (W.D. Wash. Nov. 18, 2009) ..........................................22

Zhao Hui Chen v. Jin Holding Group Inc.,
   2012 U.S. Dist. LEXIS 11570 (S.D.N.Y. Jan. 31, 2012)............................................7-8, 17

Zisumbo v. Ogden Reg'l Med. Ctr.,
   2014 U.S. Dist. LEXIS 14203 (D. Utah Feb. 4, 2014) .....................................................25

**Statutes**

28 U.S.C. § 1920.......................................................................................................................31

29 U.S.C. § 216.........................................................................................................................6

New York Labor Law § 198(1-a) ..............................................................................................6

New York Labor Law § 663 ......................................................................................................6

**Rules**

Fed. R. Civ. P. 23......................................................................................................................24

Fed. R. Civ. P. 68.....................................................................5, 9, 9 n. 3, 20, 21, 22, 23, 24, 32

## PRELIMINARY STATEMENT

The Law Office of Michael G. O'Neill ("O'Neill Law" or "Plaintiff's counsel") prosecuted this case with an unreasonable goal, never achieved that goal, and should not be rewarded for pursuing an unachievable dream. Plaintiff's counsel's conduct hurt Plaintiff (by making him wait three (3) years to settle), Defendants (by making them spend significant attorneys' fees to defend against Plaintiff's fantasy of a claim), and the Court (by wasting precious judicial resources for a case that never should have gone the distance if properly assessed by Plaintiff's counsel at the outset).

Plaintiff's counsel should not be awarded the exorbitant amount in attorneys' fees and costs requested. Plaintiff's counsel seeks $85,622.41 in fees and costs for a case which was improperly and overly litigated because Plaintiff refused to settle in bad faith. Initially, in August 2014, Plaintiff valued the case at $91,414.39, but ultimately settled for $45,500.00 at trial in June 2017 (less than half of what he originally claimed).

It should be noted that nearly a week before trial, Plaintiff's claim somehow increased to $134,000.00 in alleged unpaid wages. In just one (1) week, after a brutal cross-examination in which Plaintiff's credibility was severely impeached, Plaintiff accepted less than half of what he demanded three (3) years ago and less than thirty-three percent (33%) of the amount he demanded a week prior to trial.

It is truly astonishing that, instead of settling this case back in 2014, Plaintiff's counsel forced Defendants to litigate this case to trial, for which Plaintiff now incredibly seeks $85,622.51 in fees and costs. Over the course of almost three (3) years, Plaintiff was unsuccessful in obtaining any additional monetary relief.

If the Court were to reward Plaintiff's counsel for this tactic, courts would be even more flooded with wage and hour cases and will be forced to expend their valuable resources on such cases for years and years when cases like this one should be resolved at the outset.  This Court cannot permit Plaintiff's counsel to get away with this.

Incredibly, while Plaintiff's counsel touts that he has thirty-seven (37) years of experience, his motion for attorneys' fees has a fatal flaw.  No contemporaneous time records have been submitted together with the motion and the nature of the work done.  Therefore, Plaintiff's motion must be denied in its entirety.

Should this Court excuse Plaintiff's failure to provide contemporaneous time records (which it should not), the Court should grant no more than one-third (a plaintiff's attorney's typical recovery) on the $45,500.00 settlement amount.  Accordingly, Plaintiff's attorneys should be awarded no more than $15,166.67.

## **FACTS**

Plaintiff commenced this action on December 31, 2013.  See Docket Entry 1.  Pursuant to a stipulation, an answer was filed on March 20, 2014.  See Docket Entries 3, 5.

In Plaintiff's Initial Disclosures submitted on August 29, 2014, he stated his total damages were $91,414.39.  See Declaration of Joseph M. Labuda, Esq. (hereinafter "Labuda Decl.") ¶ 3, Ex. A.  On October 13, 2014, in response to an interrogatory concerning the calculation of Plaintiff's purported damages, Plaintiff submitted the same calculation as set forth in his Initial Disclosures.  See Labuda Decl. ¶ 4, Ex. B.  The calculations were as follows:

> … Plaintiff is entitled to recover back pay for the period commencing on January 2, 2008 through the end of his employment on or about October 20, 2013. Throughout his employment plaintiff regularly worked an average of 51 hours per week. On average, four days per week plaintiff worked in excess of 10 hours per day. During the period of January 2, 2008 through

2

October 20, 2013, plaintiff was paid an average weekly wage of $136.50. Since defendants failed to comply with the applicable provisions of the Labor Law, plaintiff's putative hourly wage is not subject to a tip credit. Accordingly, plaintiff's proper hourly wage is the full minimum wage; $7.25 an hour. Since defendants failed to pay plaintiff overtime, plaintiff's proper overtime hourly wage is $10.875 (1.5 x 7.25). In addition, on average plaintiff worked more than 10 hours four days per week. Pursuant to New York's "spread of hours" law plaintiff is entitled to an extra hour of pay, at $7.25/hour, for each day he worked more than 10 hours. Accordingly, for each week plaintiff worked, he should have been paid for 40 hours of regular work, 11 hours of overtime, and 4 hours of "spread of hours pay." Thus, plaintiff's weekly proper wage can be calculated with the following formula: (40 x 7.25) + (11 x 10.875) + (4 x 7.25) = $438.625. Plaintiff's weekly shortfall, the difference between plaintiff's average weekly wage and plaintiff's proper weekly wage, equals $302.13. Plaintiff is entitled to damages for the period of time between January 2, 2008 and October 20, 2013, a period of approximately 302.57 weeks. Plaintiff's approximate total back pay damages can be calculated by multiplying plaintiff's weekly shortfall by the total number of weeks between January 2, 2008 and October 2, 2013 (302.13 x 302.57). Thus, based on the foregoing calculations, Plaintiff's backpay damages equal $91,414.39 …

See Id. at 1-3; compare with Labuda Decl. ¶ 3, Ex. A at 2-3 (same language copied and pasted)

A settlement conference was held on December 11, 2014. See Docket Entry 20. There, Plaintiff demanded $185,000.00 to settle the case. See Labuda Decl. ¶ 6. However, Defendants submitted that Plaintiff could recover only $37,307.00 if Plaintiff's allegations were proven true (which they were not). See Id. at ¶ 7. As a result, Defendants offered $18,643.00 plus reasonable attorneys' fees to settle. See Id. at ¶ 8. Plaintiff refused to settle. See Id. at ¶ 9.

After this settlement conference, the lawsuit went through paper discovery and depositions through about May 2015. See Id. at ¶ 10. The parties then submitted their joint pretrial order on July 24, 2015. See Docket Entry 28. O'Neill Law's own billing records reveal that this case merely sat on the periphery for months and months while awaiting a trial date. See Docket Entry 62-1 at 5 (last entry in August 2015 on August 20, 2015, with one (1) entry on

3

September 22, 2015 a month later, another single entry on October 19, 2015 a month later, and then no activity until February 15, 2016 which was four (4) months later, with a single entry in March 2016 nearly a month later).

During a final pretrial conference on June 8, 2016, Magistrate Judge Levy ordered the parties to submit confidential letters to the court by June 17, 2016 concerning settlement.  See Text Only Order dated June 8, 2016.  There, Defendants increased their offer to $20,000.00 plus reasonable attorneys' fees.  See Labuda Decl. ¶¶ 11-12.   No settlement conference was held. See Id. at ¶ 13.  Instead, on June 27, 2016, Magistrate Judge Levy submitted this case to the FLSA mediation panel.  See Text Only Order dated June 27, 2016.  The parties submitted confidential pre-mediation statements to Mediator Vivian Berger on October 10, 2016 ███

██████████████████████████████████████████

███████████████████. See Labuda Decl. ¶ 14.

    ██████████████████████████████████████

██████████████████████████████████████████

████████████████. See Id. at ¶ 15.  ██████████████

██████████. See Id. at ¶ 16.  █████████████████████

████████████████████████. Id.

██████████████████████████. See Id. at ¶ 17.

On March 28, 2017, at a conference before this Court, Plaintiff said he believed that his last demand was $160,000.00, but Defendants stated that the last demand received from Plaintiff was $125,000.00 plus reasonable attorneys' fees.  See Id. at ¶ 31, Ex. F at 2:21-3:3.  ████████████

██████████████████████████████████████████.

See Id.

In April 2017, Defendants conducted a week-by-week analysis of the payroll records and assumed, for settlement purposes, that Plaintiff worked 31.4 hours per week at the tip credit minimum wage.  Id. at ¶ 18.   The total damages based on those assumptions amounted to $7,336.38 in wages.  Id.

On May 12, 2017, Defendants submitted an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the amount of $35,000.00 plus interest, costs, and reasonable attorneys' fees incurred by Plaintiff through the date of the offer.  See Labuda Decl. ¶ 19, Ex. C. Plaintiff refused to settle.  See Id. at ¶ 20.

On June 19, 2017, at a final pretrial conference, there were settlement discussions and Plaintiff unequivocally stated that he would not settle Plaintiff's claims unless the settlement included attorneys' fees.  See Id. at ¶ 21 (emphasis added).

On June 21, 2017, immediately prior to trial, Plaintiff demanded $204,000.00 ($134,000.00 in wages, and $70,000.00 in attorneys' fees) to settle the case, which was consistent with his representation to the Court two (2) days earlier that he would not settle unless the settlement included attorneys' fees.  See Id. at ¶ 22.   That very day, in order to avoid the expense of a trial, and only for that reason, Defendants countered with an offer of $110,000.00 (with $50,000.00 to the Plaintiff and $60,000.00 in attorneys' fees with flexibility as to how the $110,000.00 is to be divided).  See Id. at ¶ 23.

During the second day of trial, on June 27, 2017, after the Court requested that the parties attempt to settle the case, the parties settled for $45,500.00 plus reasonable attorneys' fees.  See Id. at ¶ 24.  After the trial, Defendants attempted to resolve the fee issue by asking for Plaintiff's counsel's billing records on July 17, 2017.  See Id. at ¶ 25.

Plaintiff's counsel ignored our request.[1] Id.  On July 28, 2017, Plaintiff submitted his motion for attorneys' fees requesting $80,870.00 in attorneys' fees, $2,502.41 in expenses, and $2,250.00 in attorneys' fees for the instant application and for seeking to enforce the settlement agreement.  See Docket Entries 62-63.  Of the $83,120.00 requested, Plaintiff's counsel's fees for the trial total $41,490.00.  Id.  Plaintiff's motion must be denied, and Plaintiff's counsel should be awarded no more than one-third of the total recovery, *i.e.*, $15,166.67.

## STANDARD AND BURDEN OF PROOF

Reasonable attorney's fees and costs are awarded to a prevailing plaintiff in an action under the FLSA and NYLL. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663(1). In determining appropriate attorneys' fees, the district court calculates a "presumptively reasonable fee" by finding: (1) a reasonable hourly rate for the attorneys' work; and (2) a reasonable number of hours of work required by the case. See Millea v. Metro-North R.R., 658 F.3d 154, 166-67 (2d Cir. 2011).  "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." See Pinzon v. Paul Lent Mech. Sys., 2012 U.S. Dist. LEXIS 134122 (Aug. 21, 2012), adopted by 2012 U.S. Dist. LEXIS 134125 (E.D.N.Y. Sept. 19, 2012). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney

---

[1] Defendants submit that a negative inference must be made for Plaintiff's failure to do so, and for other reasons further discussed *infra*.

> expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2007).  Courts also find the use of a percentage fee appropriate in unpaid wage class settlements. Velasquez v. Digital Page, Inc., 2016 U.S. Dist. LEXIS 84554, *4 (E.D.N.Y. June 28, 2016) (citing Karic v. Major Automotive Companies, Inc., 2016 U.S. Dist. LEXIS 57782 (E.D.N.Y. April 27, 2016) ("[c]ourts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund," approving a fee in that amount in an FLSA and NYLL class case) (citations omitted)); Constantin Cionca v. Interactive Realty, LLC, 2016 U.S. Dist. LEXIS 77372 (S.D.N.Y. June 10, 2016) (approving a percentage fee that is "31.3% of the gross settlement amount" on a settlement of an FLSA claim to be appropriate, finding "the 'percentage of the fund' method, attorneys' fee awards of one third or less of the total settlement amount are generally accepted …"(citations omitted)).  Ultimately, the party seeking fees bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

## ARGUMENT

### POINT I

### PLAINTIFF'S DEGREE OF SUCCESS WAS MARGINAL

It is widely held that "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." See Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (internal citations omitted); Farrar v. Hobby, 506 U.S. 103, 114 (1992).  In "judging" a case, courts take seriously their role to ensure fairness by curbing potential abuse of the litigation process at the expense of parties. See Zhao Hui Chen v. Jin Holding Group Inc., 2012 U.S. Dist.

LEXIS 11570, at *4 (S.D.N.Y. January 31, 2012) (the fee-shifting of the FLSA "was not designed to create a windfall for attorneys" or encourage an attorney to pursue litigation towards an "unreasonable goal") (emphasis added) (citing Farrar, 506 U.S. at 115); see also Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. Nov. 12, 2014) (noting that time spent and skill displayed must be used as a constant check on fee applications or there would be a grave danger that the bar and bench would be brought into disrepute, along with prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation).

The Court, in its analysis, need not adhere to a strict "rule of proportionality" between recovery and requested fees, but should give "primary consideration to the amount of damages awarded as compared to the amount sought" in determining a percentage deduction due to lack of success. See Sanchez v. I&A Rest. Corp., 2017 U.S. Dist. LEXIS 81240, *16-17 (S.D.N.Y. May 22, 2017) (internal citations omitted). In Sanchez, Magistrate Judge Freeman enumerated that "[a] district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims," and "[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve . . . are key factors in determining the degree of success achieved." Id. (quoting Barfield, 537 F.3d at 152).[2]

Here, there is no question that the relief sought was not attained. Plaintiff's counsel's fees must be reduced significantly based on Plaintiff's lack of success on their claims. Holding otherwise would result in a "windfall" to Plaintiff's counsel, the opposite purpose of FLSA fee-

---

[2] Furthermore, courts generally award one-third of settlement amounts to plaintiff's counsel in FLSA cases. See Karic, 2016 U.S. Dist. LEXIS 57782; see also Constantin Cionca, 2016 U.S. Dist. LEXIS 77372.

shifting. After litigating this basic wage and hour case for years, the Plaintiff is in a worse position than they were three (3) years ago.

The Court should not reward Plaintiff for this. See Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp., 2013 U.S. Dist. LEXIS 42950, 29 (S.D.N.Y. Mar. 21, 2013) (denying motion for fees where Plaintiff sought one billion, was offered $630,000.00 before litigation, and settled for $630,000.00 for a 239-member class after litigation and noting that in light of the pre-litigation offer of $630,000.00, the prosecution of the action placed the plaintiff in a worse position than it otherwise would have been given the burdens of this litigation).

On May 12, 2017, Defendants served a Rule 68 Offer of Judgment on Plaintiff in the amount of $35,000.00 in addition to interest, costs, and reasonable attorneys' fees. See Labuda Decl. ¶ 19, Ex. C. Thus, before the trial, Plaintiff could have received $56,385.48 (inclusive of interest[3] and in addition to attorneys' fees and costs) simply by accepting the Offers of Judgment.[4] However, the Offer of Judgment was rejected by Plaintiff, and instead of accepting and receiving $56,385.48 (in addition to reasonable attorneys' fees and costs), Plaintiff continued litigating this matter and now will be receiving **$10,885.48** less than what he would have received prior to trial.[5] See Labuda Decl. ¶ 20.

---

[3] Although the total amount of interest was not specified in the Rule 68 Offer of Judgment, it was offered, and if calculated at 9% including midpoint interest and post-employment interest which Plaintiff used in their damage calculations for settlement purposes, it would have amounted to a total recovery of $56,385.48 for Plaintiff.

[4] Plaintiff was also offered $50,000.00 of $110,000.00 a week before trial, and Defendants made clear that they were flexible as to how much Plaintiff and his attorney would receive so long as the total settlement amount remained $110,000.00. Plaintiff rejected this offer, too.

[5] Under the settlement agreement, Plaintiff is to receive $45,500.00.

Moreover, of the $83,120.00 requested by Plaintiff's counsel in attorneys' fees, $41,490.00 of this represents fees towards preparing for and conducting the trial in this matter. See Docket Entry 62-1.

Accordingly, Plaintiff is not a prevailing party and is not entitled to any fees and costs for unnecessarily prolonging this litigation at great expense and failing to obtain the relief sought. See Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan, 2013 U.S. Dist. LEXIS 42950 at 19-20 (holding plaintiff was not the prevailing party where it settled the case for the same amount that was offered to it before the case was commenced).

## POINT II

### EVEN ASSUMING *ARGUENDO* THAT PLAINTIFFS WERE THE PREVAILING PARTIES, THE HOURLY RATES AND THE NUMBER OF HOURS THEIR COUNSEL BILLED ON THIS CASE MUST BE SIGNIFICANTLY REDUCED

Even if Plaintiff was the prevailing parties (which they were not, as discussed *supra*, Point I), the amount they seek in fees must be significantly and substantially reduced for several reasons.[6] In determining appropriate attorneys' fees, the district court calculates a "presumptively reasonable fee" by finding: (1) a reasonable hourly rate for the attorneys' work; and (2) a reasonable number of hours of work required by the case. See Millea, 658 F.3d at 166-67 (2d Cir. 2011).   The party seeking fees bears "the burden of 'establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'"   See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

As discussed below, both the hourly rates for the work Plaintiff's attorneys performed and the number of hours of work performed by Plaintiff's counsel are unreasonable.

---

[6] Assuming, *arguendo*, that Plaintiff was a prevailing party, he did not prevail with respect to Defendants The Russo's Payroll Group, Inc. and individual Defendant Frank Russo.

**A.  Plaintiff's Hourly Rates Are Unreasonable**

A reasonable hourly rate is one which a "paying client would be willing to pay … bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively"  See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 184.

In this case, although demanded by Defendants, Plaintiff has not produced his retainer agreement with his counsel or the actual billing records, so it is unknown what hourly rate Plaintiff would have been willing to pay.  Plaintiff's counsel affirms that he has a "nominal" hourly billing rate which he uses for clients who wish to consult with him, and that his hourly rate is also part of his standard retainer agreement (which provides for an hourly fee in some cases as an alternative to the contingency rate), and that his hourly rate ranges from $500.00 to $750.00 per hour, but O'Neill Law fails to identify what the Plaintiff in this case specifically agreed to.  In that regard, Plaintiff's counsel's statements as to what he generally does is irrelevant.  Moreover, it is unrealistic for a Plaintiff who was earning tip credit minimum wage to expect to pay $500.00 to $750.00 per hour in a simple wage and hour matter.

More importantly, O'Neill Law concedes that he has not provided contemporaneous billing records in support of his claim, and that the records provided are merely summaries made after the fact.  See Docket Entry 62 at ¶ 15 ("I am not submitting copies of the actual time sheets because they contain privileged information and information relating to other cases").  Accordingly, because O'Neill Law failed to do so, Plaintiff's counsel is not entitled to any award of fees whatsoever.  See Cazarez v. Atl. Farm & Food Inc., No. 15-CIV.-2666 (CBA) (RML), 2017 WL 3701687, at *7 (E.D.N.Y. May 31, 2017), report and recommendation adopted, No. 15-CIV.-2666 (CBA) (RML), 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) (An application for

attorney's fees **must** be supported by "**contemporaneous** time records" that "specify, for each attorney, the date, the hours expended, **and** **the** **nature** **of** **the** **work** **done**") (Levy, J.) (emphasis added) (citing New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).[7]  O'Neill Law fails to meet this basic requirement.[8]  Accordingly, Plaintiff's fee application should be denied in its entirety.[9]

Furthermore, O'Neill Law's requested hourly rates of $450.00 for partner Michael O'Neill, $275.00 for associate Aaron Solomon, $275.00 for associate Benjamin Federici, $225.00 for an unidentified associate, and $100.00 for Plaintiff's counsel's daughter are all excessive for several reasons.

First, this was a basic and routine wage and hour dispute that did not require extensive legal knowledge or analysis.  Although Plaintiff concedes that this case did not present any unusual complexity, Plaintiff submits that there were "more issues than the average wage and hour case," including minimum wage rates, the tip credit, entitlement to overtime, and spread of hours.  Plaintiff's argument is circular, and merely identifies the standard issues that arise in wage and hour cases involving the restaurant industry.  Moreover, Plaintiff: (i) failed in his bid to be awarded regular and overtime pay at the regular minimum wage (as opposed to the tip credit

---

[7] The Court should make a negative inference if Plaintiff's counsel fails to produce his retainer agreement and original billing records.

[8] Defendants submit that this Court cannot properly determine this application without Plaintiff's actual contemporaneous time records, which Defendants repeat was requested from Plaintiff on July 17, 2017.

[9] This Court should deny the instant motion or at least Order O'Neill Law to produce the actual contemporaneous time records in order to properly determine the motion.  Any privileged or irrelevant information may be redacted.  Defendants have no idea if these records accurately reflect the time or tasks listed in O'Neill Law's "summary."

minimum wage);[10] (ii) failed to prove that Plaintiff worked over ten (10) hours every day as he claimed, as he admitted on cross-examination to leaving earlier than he testified to on direct examination; and (iii) failed to prove that he worked overtime throughout his entire employment period, as he admitted on cross-examination to being employed at a school in 2008 and/or 2009, as well as at a car dealership for a few months a year or two later.  In fact, Plaintiff's poor testimony during cross-examination resulted in his agreement to accept <u>less than half</u> of what he demanded nearly a week prior to settle the case.

Second, O'Neill Law is a boutique firm with only two (2) attorneys, Michael O'Neill and an associate.[11] A small firm like O'Neill Law carries limited overhead, requiring a reduction in Plaintiff's counsel's proposed hourly rate.  Indeed, Courts have also recognized that the "size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs."  See Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005); see also Murray v. Comm'r of N.Y. Dep't of Educ., 354 F. Supp. 2d 231 (E.D.N.Y. 2005) (noting that hourly rates tend to be higher at large firms to compensate for higher overhead costs); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (noting that the size of an attorney's firm is relevant in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"); Smith v. Wettenstin, No. 02-CIV.-5806 (MHD), 2003 WL 22966281, at 3 (S.D.N.Y. Dec. 16, 2003) ("As a single practitioner, [plaintiff's attorney] does not face the overhead of the larger firms and hence his compensation is - all other things being

---

[10] See Labuda Decl. ¶ 26, Ex. D at 4:7-24; see also Docket Entries 49, 51-53.

[11] O'Neill Law's website does not list any other attorneys.  Their first associate, Aaron Solomon, was replaced by Benjamin Federici.  It is unknown who the unidentified associate is and how long he or she worked at O'Neill Law.

equal - appropriately set at a lower rate"); Raniola v. Bratton, No. 96-CIV.-4482 (MHD), 2003 WL 1907865, at 6n. (S.D.N.Y. Apr. 21, 2003) ("The size of the firm is deemed to be pertinent [in calculating a reasonable hourly rate] because larger law firms are assumed to carry a larger overhead, thus necessitating a higher hourly rate").

Accordingly, courts routinely reduce the hourly rate for attorneys in small firms in wage and hour cases.  See Maldonado v. Bistro 1285 Inc., 2013 U.S. Dist. LEXIS 70815, 11-12 (S.D.N.Y. May 13, 2013) ("In light of the straightforward nature of this case… and awards in similar cases, $250.00 is a reasonable hourly rate"); see also Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76 (E.D.N.Y. 2012) (awarding $275.00 to a partner and $225.00 to an associate in a similar FLSA/NYLL case); Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322 at *45 (S.D.N.Y. Aug. 2, 2012) (finding a $200.00 hourly rate reasonable for an attorney with 14 years' experience in a FLSA case); Estrella v. P.R. Painting Corp., 2009 U.S. Dist. LEXIS 9608 at *4 (E.D.N.Y. February 7, 2009) (holding that $250.00 per hour is a reasonable hourly rate for FLSA work performed by an experienced attorney that has practiced exclusively in the area of labor and employment law since 1997); Cesario v. BNI Constr., Inc., No. 07 Civ. 8545, 2008 U.S. Dist. LEXIS 103155 at *25-26 (S.D.N.Y. Dec. 15, 2008) (awarding $200.00-$250.00 as reasonable hourly rates in a FLSA case); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202 (E.D.N.Y. November 30, 2007) (the court set hourly rates for a partner at Dewey & LeBoeuf LLP at $250.00, associates at $175.00 and paralegals at $75.00 in wage and hour litigation).

It must be noted that Plaintiff's cited authority in an attempt to justify its requested hourly rates involved O'Neill Law's background in civil rights cases.  Plaintiff's counsel's background in that realm is simply not relevant, and this Court should only consider Plaintiff's counsel's limited background in the wage and hour context to support his proposed hourly rates.  Indeed, a

search on PACER shows that of 158 cases filed by O'Neill Law from 1995 until present, **eight (8)** of those cases are FLSA cases.[12]   Considering that Plaintiff's counsel's experience with FLSA cases consist of only five percent (5%) of his entire practice, Plaintiff's counsel's requested hourly rates are simply unjustifiable.

Based on the foregoing, a rate of no more than $250.00 for the partners, $200.00 for the associates, and $50.00 for Plaintiff's counsel's daughter is more than fair for their handling of this simple litigation which, as discussed *supra* and in further detail below, should have concluded well before any trial.

**B.  Plaintiff's Recovery Is Disproportionate to The Requested Fees**

**i.    The Requested Fees Are More Than 183% of Plaintiff's Recovery**

An across-the-board percentage cut in the hours claimed and/or in the amount is warranted because the settlement amount ($45,500.00) is grossly disproportionate to attorney's fees sought ($83,120.00). "Although the amount of attorney's fees awarded may exceed the amount of damages ultimately recovered by the plaintiff, the court must consider the amount of damages awarded in evaluating the reasonableness of a claim for attorneys' fees." See Levy v. Powell, No. 2005 WL 1719972, at 6 (E.D.N.Y. July 22, 2005) (emphasis added); see also Kassim v. City of Schenectady, 415 F.3d 246, 254 (2d Cir. 2005) (recognizing that the primary consideration is the amount of damages awarded as compared to the amount sought when determining a percentage deduction of fees due to lack of success) (emphasis added); Morris v. Eversley, 343 F. Supp. 2d 234, 246 (S.D.N.Y. 2004) (recognizing that the degree of monetary success (or lack thereof) is a factor that must be considered).

---

[12]  See Labuda Decl. ¶ 27, Ex. E (The search consists of Southern and Eastern District Cases; "nos" refers to the case type, and 710 is the code used for FLSA cases; for some reason, the instant case does not appear in PACER as a case by O'Neill Law).

### ii.     Plaintiff was Dishonest About Attorney's Fees During Settlement Discussions

As discussed *supra*, Defendants made numerous attempts to settle this simple case. On December 11, 2014, Plaintiff represented that he had incurred $35,000.00 in attorneys' fees when he demanded $185,000.00 to settle Plaintiff's claims. See <u>Labuda</u> <u>Decl.</u> ¶ 6. However, his own records (which were made after the fact) show that he had only incurred $22,815.00 in attorneys' fees in December 2014. See Docket Entry 62-1. ████████████████

████████████████████████████████████████

██████████████████████████████████████. See <u>Labuda</u> <u>Decl.</u> ¶ 15. However, his own records show that he had incurred only $39,475.00 in attorneys' fees in October 2016. See Docket Entry 62-1.

This cavalier practice of padding and inflating constitute material misrepresentations unbecoming of an attorney and an officer of the Court, show O'Neill Law's true colors, and are emblematic of the inherent greed of Plaintiff's counsel and the reason why this Court was forced to unnecessarily empanel a jury when Plaintiff could have settled much, much sooner. This Court should consider this as a substantial factor in determining Plaintiff's motion. Defendants submit that O'Neill Law unnecessarily and unjustifiably prolonged this simple, easy to resolve matter to line his own pockets. Indeed, he claimed he incurred $35,000.00 in attorneys' fees in <u>December 2014</u> when trial preparations and the actual trial resulted in fees of only $41,490.00!

O'Neill Law did not only hurt Defendants by engaging in this course of conduct. He hurt his own client. O'Neill Law's after-the-fact record of time spent in this matter is replete with telephone calls from the Plaintiff himself seeking an update on the matter as it unnecessarily dragged on. Defendants submit that this Court must substantially reduce, if not altogether eliminate, the fee award here to disincentivize the plaintiffs' bar from engaging in such conduct.

### iii.    Plaintiff's Conduct Resulted in A Waste of Legal & Judicial Resources

In its analysis, the Court should look critically at how O'Neill Law prosecuted this case and consider if resolution without wasting a large amount of legal and judicial resources, including the empaneling of a jury, was possible. If the answer is yes, the Court should cut off all fees from the time it deems O'Neill Law should have settled. Otherwise, the Court risks creating a moral hazard by incentivizing O'Neill Law and the plaintiff's bar as a whole to unnecessarily churn and delay appropriate settlements in future cases in order to run up large fees. See Velasquez, 2016 U.S. Dist. LEXIS 84554 at *3 (citing Zhao Hui Chen, 2012 U.S. Dist. LEXIS 11570).

Plaintiff consistently demanded nearly double what he ultimately settled for, and the record evinces that he engaged in reverse bargaining (which Defendants submit was in bad faith).  Defendants' position has always been, and the evidence adduced at trial established, that Plaintiff was properly paid (and earned an enormous amount of money in tips).  To Plaintiff's sheer benefit, Defendants records were lost in Hurricane Sandy, permitting him to unscrupulously contest Defendants' assertions.

Plaintiff's damages calculations submitted in his Initial Disclosures and in response to discovery demands incorrectly applied the regular minimum wage as opposed to the tip credit minimum wage, highly inflated his attorneys' fees (which changed with the wind at every settlement conference), and refused to consider Defendants' ultimately meritorious position concerning the tip credit and the fact that Plaintiff simply did not work the number of hours that he claimed he worked.  Defendants assert that this case could have been settled at a much earlier juncture but for Plaintiff's unreasonable settlement demands which ultimately proved to be nothing more than a pipe dream.

Making matters worse, O'Neill Law continued to pursue vastly inflated damages even after discovery contradicted the Complaint allegations and Plaintiff's discovery submissions.  It was unreasonable to expend nearly 240 hours on a simple wage and hour case that ultimately settled for $45,500.00 (less than half of its original claimed value). See Labuda Decl. ¶ 24.

It must also be emphasized that a week prior to trial, on June 19, 2017, Plaintiff told this Court that he would not settle this case unless the settlement amount included attorneys' fees. See Id. at ¶ 21.  However, this settlement position put Plaintiff's counsel's interests above Plaintiff's, especially since the attorneys' fees were overinflated and Defendants did not even have a copy of his bills when he tied his fees to any potential settlement.  See Id. at ¶ 29.

This Court should exercise its discretion and reduce the excessive and unreasonable fees sought to no more than $25,686.72 in light of the disproportionately low amount of damages recovered. See Mendez v. Radec Corp., 907 F. Supp. 2d 353, 358 (W.D.N.Y. 2012) (applying a 70% across the board reduction because the plaintiffs did not use billing judgment in calculating the number of hours reasonably expended for this litigation because they could have settled the case much earlier in the lawsuit, incurring significantly less attorneys' fees and costs, except for their insistence on a figure in the millions of dollars range - well before they had incurred substantial fees and ultimately they conceded that their substantive claims were worth far less than they had originally estimated seven years prior); see also Sahyers v. Prugh, Holliday & Karatinos, P.L., No. 08-10848 (M.D. Fla. March 3, 2009) (affirming denial of all of plaintiff's attorneys' fees and costs in an FLSA case because the plaintiff sought significant money damages without offering proof of the amount actually owed by defendants and plaintiff wasted the judiciary's significant time and resources on unnecessary litigation); Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("unreasonably prolonging a suit is a reason to reduce fees").

Alternatively, this Court should reduce the award by eliminating all hours for trial preparation, conducting the trial, and any settlement-related tasks, which amount to a $41,490.00 reduction for trial-related work (representing 92.2 hours), and $3,170.00 for settlement-related work (representing 11.4 hours).

## C.  O'Neill Law's Hours Expended on the Case Are Unreasonable

To determine a reasonable number of hours of work for a particular case, courts first look for documentation in the form of "contemporaneous time records 'specifying, for each attorney, the date, the hours expended, and the nature of the work done."  See Greathouse v. JHS Sec., Inc., 2012 U.S. Dist. LEXIS 127312 (S.D.N.Y. Sept. 7, 2012) (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)).  If the documentation is inadequate, the court may reduce the award accordingly.  See Fuchs v. Tara Gen. Contr., Inc., 2009 U.S. Dist. LEXIS 102286, 3-4 (E.D.N.Y. Nov. 3, 2009).

Courts also look to their "own familiarity with the case and . . . experience generally." See Guallpa v. N.Y. Pro Signs Inc., 2014 U.S. Dist. LEXIS 77033, 29 (S.D.N.Y. May 27, 2014). Because attorneys' fees are dependent on the unique facts of each case, the resolution of the issue is committed to the discretion of the district court. Id.  "Finally, billing judgment must be factored into the equation." Id.  The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed.  See Fuchs, 2009 U.S. Dist. LEXIS 102286 at 3-4.

In determining the hours reasonably expended, courts consider the following factors: (1) hours which reflect the inefficiency of duplication of services should be discounted; (2) hours that are excessive, unnecessary or which reflect "padding" should be disallowed; (3) legal work should be differentiated from nonlegal work such as investigation, clerical work, the compilation

of facts and other types of work that can be accomplished by nonlawyers who command lesser rates; (4) time spent in court should be differentiated from time expended for out-of-court services; and (5) the hours claimed should be weighed against the court's own knowledge, experience and expertise as to the time required to complete similar activities."  See Olsen v. County of Nassau, No. 2010 U.S. Dist. LEXIS 5915 (E.D.N.Y. Jan. 26, 2010).  In considering an application that includes excessive hours, a court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).

As discussed below, there are several compelling reasons why the amount of hours Plaintiff's counsel expended on this case are unreasonable.

### i.   Plaintiff Unreasonably Refused to Accept Defendants Rule 68 Offer of Judgment or Settlement Demands

The party seeking payment of attorneys' fees must use "billing judgment" and exclude from its request any "excessive, redundant or otherwise unnecessary hours."  See Hensley v. Eckerhart, 461 U.S. 424, 433-434 (1983) (emphasis added).

Moreover, courts should beware of plaintiffs' attorney's incentive to "avoid quick settlement or, indeed, any settlement, in hopes of prolonging the proceedings and accumulating billable hours" and minimize this incentive with "an intensified scrutiny on the part of the court, which must approve each negotiated settlement."  See Detroit v. Grinnell Corp., 495 F.2d 448, 470 (2d Cir. 1974) (emphasis added), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).  The Goldberger Court reinforced this demand from Grinnel stating that the "express goal of the Grinnell opinions was to prevent unwarranted windfalls to attorneys" and courts should continue to honor that ethos.  See 209 F.3d at 49.

20

"Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation." See Stanczyk v. City of New York, 752 F.3d 273, 280 (2d Cir. 2014). "A rejected Rule 68 offer becomes part of the written record of the case and is used to determine attorneys' fees and costs awards at the close of the suit. If the judgment or settlement ultimately obtained by plaintiff is less than the Rule 68 offer, plaintiff cannot recover attorneys' fees or costs from the date the offer was made to the end of the suit." See Wallert v. Atlan, 2015 U.S. Dist. LEXIS 13958 (S.D.N.Y. Feb. 5, 2015).

As discussed *supra*, Plaintiff would have received $56,385.48 if he accepted the Rule 68 Offer, which exceeds the amount he is receiving under the settlement. "Further, if the plaintiff cannot establish greater damages than those offered by the defendant, under Rule 68, he will be obligated to compensate that defendant for "the costs [it] incurred after the offer was made." See Wallert, 2015 U.S. Dist. LEXIS 13958 at 2 (citing Boutros v. JTC Painting & Decorating Corp., 989 F. Supp. 2d 281, 286 n.2 (S.D.N.Y. 2013)).

Accordingly, Plaintiff and his counsel should be directed to pay Defendants costs incurred after serving the Rule 68 Offer of Judgment in May 2017. Defendants respectfully submit that Plaintiff and his counsel should also be directed to pay Defendants' attorneys' fees based on their conduct in forcing Defendants to go to trial. In fact, due to the conduct of Plaintiff's counsel, Defendants have been forced to incur $42,764.00 in attorneys' fees since the Rule 68 Offer of Judgment was served on May 12, 2017. See Labuda Decl. ¶ 28.

Plaintiff's attorneys' fees should be reduced by these attorneys' fees and costs incurred by Defendants at trial, or at a minimum, the Court should take into account that Defendants have had to incur these substantial fees and costs because of Plaintiff's counsels' tactics in delaying

this litigation for his own financial gain.  Defendants should not be punished twice by having to pay substantial fees to their own counsel and also to Plaintiff's counsel.

In determining reasonable fees, courts must take into account Rule 68 Offers of Judgment and reasonable settlement offers made by defendants (even if not for full relief) that are rejected by plaintiff attorneys that result in a windfall to the plaintiff's attorneys. Courts have routinely followed this logic in deciding these motions.  See Ortiz v. Prestige Kitchen Design, Inc., 2013 U.S. Dist. LEXIS 135866 (E.D.N.Y. Sept. 23, 2013) (Wexler, J.) (in FLSA case, directing parties to provide the Court all information concerning what, if any, offers or demands were made in this case, and at what juncture in the litigation); see also Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan, 2013 U.S. Dist. LEXIS 42950 at 29; Falleson v. Paul T. Freund Corp., 736 F. Supp. 2d 673 (W.D.N.Y. 2010) (reducing fee because the efforts expended were grossly out of proportion to the ultimate settlement of the matter because early in the litigation, defendant made an Offer of Judgment to settle the matter for the same amount the case settled for five years later after which time plaintiff's counsel had generated fees five times greater than they were at the time the Offer of Judgment was made).  Other circuits have expressly stated that substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees.  See Moriarty v. Svec, 233 F. 3d 955, 967 (7th Cir. 2000); Haworth v. Nevada, 56 F.3d 1048, 1050 (9th Cir. 1995); Wyant v. Allstate Indem. Co., 2009 U.S. Dist. LEXIS 111663 (W.D. Wash. Nov. 18, 2009) (refusing to reward counsels' tactic of padding their hours after an offer of judgment was accepted and plaintiff's counsel spent excessive hours continuing the litigation); Powell v. Carey Int'l, Inc., 547 F. Supp. 2d 1281, 1284 (S.D. Fla. 2008) (refusing to award attorneys' fees for unnecessary motions).

Thus, given the Second Circuit's precedent and the persuasive authority from other districts, the Court should consider the reasonableness of Defendants' Rule 68/settlement offers, as discussed below, when computing the reasonable fee award. As discussed *supra*, throughout the course of this litigation, Defendants attempted to resolve this case, but Plaintiff refused to settle. See Labuda Decl. ¶¶ 5-31.

Furthermore, it could not be any clearer that O'Neill Law engaged in bad faith in unreasonably refusing to settle this case and prosecuting it just so that they could achieve the result they seek here: padding hours to recover an exorbitant amount of money in attorneys' fees for a small financial recovery that they could have obtained at the outset. Indeed, O'Neill Law's statement that it takes on very few cases all of which are on contingency (see Docket Entry 62 at ¶ 9) bolsters Defendants' argument that O'Neill Law refused to settle this case for the sole reason that it wanted to extend the litigation to obtain a large attorneys' fee award. To reward O'Neill Law at Defendants' expense for this tactic of intentionally protracting this litigation to line their own pockets would incentivize plaintiffs' counsel in future cases to discourage their clients to settle cases at the early stages of litigation just so counsel can unnecessarily churn and delay an appropriate settlement in order to run up large fees. Such a situation benefits no one – not Plaintiff who has to wait longer to settle his case, not Defendants who have to expend more in defense fees, and not the Court whose docket is being clogged up with these cases (as provided by the Federal Judicial Center, approximately 8,000 FLSA cases are filed per year)!

As such, Plaintiff's counsel's application for attorneys' fees should be appropriately reduced to a maximum of $15,166.67 – which represents a third of the recovery to Plaintiff. Moreover, Plaintiff should be directed to pay Defendants' attorneys' fees and costs after the Rule 68 Offer of Judgment was served.

**ii.    Plaintiff's Calculation of Damages was Unreasonably Inflated**

Not only did Plaintiff refuse to accept Defendants' Rule 68 Offer of Judgment, but they unnecessarily prolonged the submission of their Initial Disclosures.  See Labuda Decl. ¶ 3, Ex. A.   A routine matter such as this one should have been promptly made since Plaintiff's counsel claims he has over thirty-seven (37) years of experience.  As discussed *supra*, and as evidenced by Plaintiff's acceptance of less than half of what he sought, Plaintiff's calculation of damages was unreasonably inflated.

Because Plaintiff's initial disclosures were substantially and unreasonably inflated, O'Neill Law's application for attorneys' fees should be denied or reduced substantially.  See Mendez, 907 F. Supp. 2d at 358  (applying a 70% across the board reduction); see also Sahyers, No. 08-10848 (M.D. Fla. March 3, 2009) (affirming denial of all of plaintiff's attorneys' fees and costs in an FLSA case because the plaintiff sought significant money damages without offering proof of the amount actually owed by defendants and plaintiff wasted the judiciary's significant time and resources on unnecessary litigation); Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("unreasonably prolonging a legitimate suit is a reason to reduce fees").

**iii.    Plaintiff is Not Entitled to Fees on His Unsuccessful Motions and on Defendants' Successful Motions**

The Plaintiff is not entitled to fees for his unsuccessful motions.  See White v. Western Beef Props., 2014 U.S. Dist. LEXIS 155868 at 13-14 (plaintiffs not entitled to fees on unsuccessful Rule 23 motion); De Los Santos v. Just Wood Furniture, Inc., 2010 U.S. Dist. LEXIS 15463 (S.D.N.Y. Feb. 2, 2010) (reducing the total fee award by 40 percent because *inter alia*, plaintiff was unsuccessful on her motion for summary judgment and motion to amend the judgment); Bethlehem Area Sch. Dist. v. Zhou, 2014 U.S. Dist. LEXIS 89985, 11 (E.D. Pa. July 1, 2014); Am. Bd. of Internal Med. v. Muller, 2014 U.S. Dist. LEXIS 25784, 6-7 (E.D. Pa. Feb.

26, 2014) (given that more than 426.4 hours and $150,470.00 was expended on Plaintiff's wholly unsuccessful motion for summary judgment, we believe that Plaintiff's decision to seek "substantially reduced" attorney's fees is well counseled); Zisumbo v. Ogden Reg'l Med. Ctr., 2014 U.S. Dist. LEXIS 14203, 14 (D. Utah Feb. 4, 2014); Hurst v. Town of Merrillville, 2011 U.S. Dist. LEXIS 65476 (N.D. Ind. June 17, 2011) (finding it "inappropriate for Defendant to bear the cost for Plaintiffs' unsuccessful Motion").

Plaintiff should not be entitled to any fees for his unsuccessful motion concerning the tip credit for which O'Neill Law billed their time.  See Docket Entries 49, 51-52, 53.  Similarly, Plaintiff should not be entitled to fees for motions filed by Defendants for which Defendants prevailed, including Defendants' motions *in limine* (see Docket Entries 37-39).

### iv. O'Neill Law Should Not Be Awarded Fees for Performing Duplicative Work

Although this was a simple wage and hour dispute, O'Neill Law often utilized several attorneys and office staff to perform many of the same tasks.  For example, on April 1, 2014, a partner "calibrated" time and back pay.  On July 22, 2014, an associate spent three (3) hours doing "tip average calculations," something a paralegal could have done.  Similarly, on December 10, 2014, an associate and a clerk worked on excel spreadsheets to calculate damages, and on April 10, 2015, an associate billed for drafting a routine letter enclosing a deposition transcript.  It must be noted that many times, Plaintiff's counsel and his associates billed different amounts of time for the same task, such as a telephone conference between themselves. See Docket Entry 62-1 (entries dated June 17, 2014, August 25, 2014).

Similarly, on June 17, 2014, a partner and an associate purportedly met with Defendants' counsel, and the partner billed 1.5 hours for the meeting, while the associate billed 0.2 hours for the same meeting.

However, only one (1) attorney should be awarded fees for performing each task.  See Wei Yan Yan v. 520 Asian Rest. Corp., 2015 U.S. Dist. LEXIS 28495, 27 (S.D.N.Y. Mar. 9, 2015) (in FLSA action, reducing hours for work performed by more than one attorney); see also Small v. New York City Transit Auth., 2014 U.S. Dist. LEXIS 39582, 36-37 (E.D.N.Y. Mar. 25, 2014) (reducing fees for same tasks performed by multiple attorneys).

Moreover, Plaintiff's counsel made two (2) misrepresentations to the court when he declared that "one other associate attorney billed an insignificant amount of time (.3 hours) to the case, and I am requesting $225.00 an hour for his time because a review of Plaintiff's counsel's time records reveals otherwise.  TG, the unidentified associate, billed a total of 1.0 hour between March 22, 2017 through March 28, 2017 at the rate of $275.00 per hour.  Accordingly, this Court must carefully scrutinize Plaintiff's counsel's representations in conjunction with his submitted time records, which Plaintiff's counsel concedes are not the actual records, and which Defendants submit contain no totals at the end.  Based on this overbilling practice, an across the board reduction to Plaintiff's fees is warranted to account for overbilling.

### v.    O'Neill Law Overbilled

Courts reduce hours for overbilling.  See Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509 (W.D.N.Y. 2001); Morales v. Travel Ports of Am., 1998 U.S. Dist. LEXIS 9539 (S.D.N.Y. June 24, 1998); Perez v. Manhattan Jeep Eagle, 1997 U.S. Dist. LEXIS 11928 (S.D.N.Y. Aug. 7, 1997).

O'Neill Law included travel time for various tasks.  See Docket Entry 62-1 (entries dated January 28, 2015 and October 17, 2016).  Plaintiff's counsel billed for conducting the deposition of a third-party witness that it ultimately did not call at trial during Plaintiff's case-in-chief.  See Id. (entry dated January 28, 2015).  These are just some examples of O'Neil Law's overbilling

26

practices.  Because O'Neill Law overbilled on these tasks, a presumption should be made that they overbilled on all work performed on this case.  Therefore, Defendants respectfully request a 60% across the board reduction to the amount of time spent on all of Plaintiff's billing entries.

> ### vi.   O'Neill Law Utilized Experienced Counsel to Perform Mundane Legal and Non-Legal Tasks

O'Neill Law routinely utilized a partner of the firm rather than an associate or paralegal to perform mundane legal tasks such as preparing damage calculations, filing documents with the Court, legal research, and drafting various documents.  See Docket Entry 62-1 (entries dated October 14, 2016, April 22, 2015, April 30, 2015, April 7, 2017, April 11, 2017, April 12, 2017, April 14, 2017, April 25, 2017, June 20, 2017, and June 28, 2017).  Plaintiff's fees should be reduced to the rate of an associate or paralegal for such mundane tasks.  See Small v. New York City Transit Auth., 2014 U.S. Dist. LEXIS 39582 at  36-37 (reducing fees for tasks performed by attorney where tasks such as filing the complaint, affidavit of service of the complaint, document review, review of deposition transcripts, could have been performed by an attorney billing at a much lower rate).

O'Neill Law also routinely utilized attorneys rather than a paralegal or secretary to perform clerical tasks such as preparing motion papers for filing, preparing exhibits and exhibit tabs, making copies of documents, drafting a table of authorities, preparing envelopes and mail merges, etc.  O'Neill Law is not entitled to any fees for such clerical tasks as clerical tasks are not even compensated at a paralegal rate because they are normally subsumed into an attorney's overhead expenses.  Id. (citing Bridges v. Eastman Kodak Co., 1996 U.S. Dist. LEXIS 809, 1996 WL 47304, at *7 (S.D.N.Y. Feb. 06, 1996), aff'd, 102 F.3d 56 (2d Cir. 1996) (filing, delivery, service of papers, and other secretarial tasks not compensable)); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (no fees for time attorney

spent executing purely clerical tasks).    Accordingly, Plaintiff's fee application should be appropriately reduced.

> ### vii.    Plaintiff Should Not Be Awarded Fees for Block Billing or Vague Entries

Plaintiff's request for attorneys' fees should be substantially reduced because O'Neill Law's time records contain certain undetailed time entries and "block billing," which makes it impossible to determine how much time was spent on appropriate attorney tasks, duplicative or unnecessary work, clerical tasks, work on unsuccessful motions, or other details necessary to evaluate the reasonableness of Plaintiff's application.

It is well-settled that where, as here, a party's attorneys' fees are based on vague time entries or "block billed," an across-the-board reduction of the fee application is appropriate.  See Sabatini, 190 F. Supp. 2d at 522 (reducing fees by 15% for vague entries such as "hearing preparation" and "review records"); see also Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) ("because of these ambiguities, and the inherent difficulties the Court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks, the Court finds that a fifteen percent 'flat' reduction of the fees … is warranted"); Local 32B-32J, SEIU v. Port Auth., 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (reducing attorneys' fees by 20% to account for vague time entries); Access 4 All, Inc. v. Grandview Hotel Ltd. P'ship, No. 04-CIV.-4368 (TCP) (MLO), 2006 U.S. Dist. LEXIS 15603, at 12 (S.D. N. Y. Mar. 6, 2006) (reducing attorneys' fees from $250.00 to $150.00/hour and paralegal fees from $100.00 to $75.00/hour because, inter alia, "the law firm's practice of block billing makes it impossible for this Court to determine the exact amount of time the attorneys spent on their various tasks"); Comm'n Express Nat'l, Inc. v. Rikhy, No. CV-03-4050 (CPS), 2006 U.S. Dist. LEXIS 8716, at *18 (E.D.N.Y. Feb. 16, 2006) (reducing attorneys' fee by 10%

because "the attorneys engaged in some block billing"); Aiello v. Town of Brookhaven, No. 94-CIV.-2622 (FB) (WDW), 2005 U.S. Dist. LEXIS 11462, at * 12 (E.D.N.Y. June 13, 2005) (reducing one attorney's bill by 15% and 10% due to vagueness and "block billing").

Here, numerous entries are "block billed." See Docket Entry 62-1 (entries dated October 13, 2014, January 28, 2015, April 3, 2015, April 10, 2015, April 28, 2015, April 29, 2015, April 30, 2015, May 1, 2015, May 7, 2015, June 20, 2015, July 16, 2015, July 17, 2015, July 23, 2015, July 24, 2015, July 26, 2016, October 14, 2016, October 17, 2016, April 6, 2017, April 7, 2017, April 11, 2017, April 12, 2017, April 18, 2017, April 19, 2017, April 25, 2017, June 20, 2017, June 21, 2017, June 23, 2017, June 24, 2017, June 26, 2017, and June 27, 2017).

Accordingly, Plaintiff's application for attorneys' fees should be appropriately reduced.

### viii.   Plaintiff Should Not Be Awarded Fees for Vague and Incomplete Billing Descriptions

Plaintiff's attorneys' fees should also be reduced because of vague and incomplete billing records. See Chambless v. Masters, Mates & Pilots Pension Plan, 1988 U.S. Dist. LEXIS 7486, at *16 (S.D.N.Y. July 21, 1988) (noting that words like "Review", "Report", "Work on Interrogatories," "Letter," "Conferring with Client," or "Indexing" are too vague to document the hours claimed, and reducing fee award by 15% to ensure that the fee award excludes inadequately documented expenditures of time) (quoting Hensley, 461 U.S. at 437 & n.12); Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 401 (S.D.N.Y. 2000) (15% reduction to address numerous problems with requested hours); Mr. X v. New York State Dep't of Educ., 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) (20% reduction to account for vague, incomplete, and duplicative time entries); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (15% reduction to account for vague billing entries).

Here, nearly every entry is vague and incomplete.  See Docket Entry 62-1 (highlighted entries include those dated May 16, 2014 ("demands"), June 13, 2014 ("settlement rules"), July 22, 2014 ("tip average calculations"), August 21, 2014 (306(b)) (two entries), August 29, 2014 ("research, disclosures"), October 7, 2014 ("responses"), November 13, 2014 ("NCA"), and May 18, 2015 ("filed affidavit")).  Courts have reduced fee applications for entries much less vague than the ones found in O'Neill Law's records.  See Hernandez v. Punto y Coma Corp., No. 10-CIV.-3149 (NGG) (RML), 2013 WL 4875074, at *11 (E.D.N.Y. Sept. 11, 2013) (Levy, J.) ("Additionally, many of the time entries contain vague explanations of the work performed by counsel. There are, for example, many entries that describe the work performed as "Telephone conversation with co-counsel" or "Meeting with clients," as well as other vague entries such as "Speak with Margaret strategies") (citing Cho, 524 F. Supp. 2d at 209 ("These entries are not sufficiently specific to permit the Court to determine whether the attorneys spent their time on reasonably necessary tasks much less efficiently").   As such, the Court should deduct attorneys' fee for all vague or incomplete time entries, including – but not limited to – the foregoing entries.

### ix.    Plaintiff is Not Entitled to Costs

Because Plaintiff has failed to produce a copy of their retainer agreement with O'Neill Law, there is no way to know if Plaintiff was expected to reimburse O'Neill Law for costs such as postage, copying costs, and depositions.

Moreover, Plaintiff has not provided receipts for all costs they incurred.  With respect to the copies, Plaintiff submits that copies were made at $0.25 per page, but the amount demanded for copies is $309.57 (which is not even divisible by $0.25) without addressing what was copied or when.  See Docket Entry 62 at ¶¶ 20-21.   Defendants submit that Plaintiff is merely

submitting made up numbers for an unjustified windfall, just like he did with respect to his attorneys' fees during settlement negotiations.

Additionally, Courts have held that special delivery charges as well as postage are not expressly covered by 28 U.S.C. § 1920 and thus are not recoverable as taxable costs.  See M.S. Distributing Co. v. Web Records, Inc., 2003 U.S. Dist. LEXIS 13297 at *4 (N.D. Ill. July 31, 2003); see also AM Properties v. Town of Chapel Hill, 202 F. Supp. 2d 451, 456 (M.D.N.C. 2002).  Finally, a judge may tax as costs fees for printed or electronically recorded transcripts necessarily obtained for use in the case.  See 28 U.S.C. § 1920.  Plaintiff failed to establish what transcripts he obtained for what witnesses, let alone whether they were necessarily obtained for use in the case.  Accordingly, no costs for deposition transcripts should be awarded.

Therefore, Plaintiff's application for the foregoing costs should be denied.

### x. O'Neill Law Overbilled for Travel

As discussed *supra*, Plaintiff's counsel improperly billed for travel at regular hourly rates. Travel time is routinely billed at fifty percent (50%) of the attorney's hourly rate.  See Small v. New York City Transit Auth., 2014 U.S. Dist. LEXIS 39582, 36-37 (E.D.N.Y. Mar. 25, 2014). Accordingly, Plaintiff's fees should be further reduced to account for travel at fifty percent (50%) of the hourly rate approved by the Court.

### xi. Other Considerations

Plaintiff submits that Defendants should not object to paying Plaintiff's attorneys' fees at $450.00 per hour because Defendants pay their counsel at rates exceeding $400.00 per hour.  As an initial matter, the amount paid by Defendants to their own counsel is irrelevant to the Court's determination of Plaintiff's motion for fees.  More importantly, Plaintiff's assertion is patently false. See Labuda Decl. ¶ 30.

Moreover, in seeking $275.00 an hour for Messrs. Solomon and Federici, Plaintiff entirely fails to provide enough background information about the level of experience the associates had during the time they worked at O'Neill Law.  Furthermore, Plaintiff inappropriately sets his requested rate of $275.00 per hour based on the amount he would seek a billing rate for them if they were still employed by O'Neill Law now.  See Docket Entry 62 at ¶¶ 10-11.

## CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that Plaintiff's motion for attorneys' fees and costs be denied and that the Court direct Plaintiff and his counsel to pay Defendants' attorneys' fees and costs after the Rule 68 Offers of Judgment were served.


Dated: Lake Success, New York
     September 8, 2017

         Respectfully submitted,

         **MILMAN LABUDA LAW GROUP PLLC**


         _____/s_____
         Joseph M. Labuda, Esq.
         Emanuel Kataev, Esq.
         3000 Marcus Avenue, Suite 3W8
         Lake Success, NY 11042-1073
         (516) 328-8899 (office)
         (516) 328-0082 (facsimile)
         joe@mllaborlaw.com
         emanuel@mllaborlaw.com

         _Attorneys for Defendants_
cc:    Plaintiff (via ECF).